```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE NORTHERN DISTRICT OF TEXAS
                        FORT WORTH DIVISION

ALLIED WASTE SYSTEMS, INC.      §
                                §
VS.                             §  CIVIL ACTION NO. 4:06-CV-328-Y
                                §
INTERNATIONAL BROTHERHOOD       §
OF TEAMSTERS, LOCAL 767         §
```

                    ORDER DENYING PLAINTIFF'S
                MOTION FOR SUMMARY JUDGMENT AND
         GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

This case involves the final and binding decision of an arbitrator concluding that plaintiff Allied Waste Systems, Incorporated ("Allied Waste"), violated the collective-bargaining agreement ("CBA") when it terminated the employment of David Escobar because he had not performed his regular job duties for a period of six months.  Allied Waste has refused to abide by the arbitrator's decision and has brought suit in this Court under section 301 of the Labor Management Relations Act of 1947 ("LMRA"), as amended, 29 U.S.C. § 151 *et seq.*, requesting that the Court vacate the arbitrator's decision and award.  Defendant International Brotherhood of Teamsters, Local 767 ("Local 767"), filed a counterclaim requesting that the Court confirm the arbitrator's decision and order the enforcement of his award.  Local 767 also counters that Allied Waste's refusal to abide by the binding decision of the arbitrator is without justification and requests that the Court award it reasonable attorney's fees.

The Court has before it the parties' cross-motions for summary judgment that call upon the Court to decide: (1) whether it should

vacate the arbitrator's decision and award in favor of Local 767 or confirm it and order its enforcement; and, (2) whether Allied Waste's refusal to abide by the arbitrator's decision is unjustified and thus entitles Local 767 to reasonable attorney's fees.

After review, the Court concludes that the arbitrator acted within the scope of his authority and that his decision and award in favor of Local 767 is rationally inferable from the terms of the CBA and should be enforced. Further, the Court concludes that Allied Waste's refusal to abide by the arbitrator's decision is without justification and in violation of its obligation to honor federal labor policy favoring the voluntary arbitration of labor disputes.

I.  Factual Background

The material facts in this case are not in dispute. Allied Waste and Local 767 are parties to a valid CBA that includes a final and binding arbitration procedure for settling grievances. It is undisputed that the CBA covers the grievance at issue here.

Allied Waste provides a variety of trash-hauling services in the greater Dallas-Fort Worth, Texas, area. As part of its services, Allied Waste picks up trash and garbage containers on regularly established routes using "roll-off" trucks. Escobar worked for Allied Waste as a driver of these roll-off trucks at its Fort Worth, Texas, facility from 1982 until his termination on July

23, 2003.

Escobar's position involved heavy-duty work. He worked alone and was required to lift amounts in excess of twenty-five pounds, push and pull heavy doors, and install and remove heavy tarpaulins. He routinely worked ten-hour shifts on as many days a week as was required by the volume of work to be completed.

On January 23, 2003, Escobar suffered an on-the-job injury. The next day, Escobar saw a physician selected by Allied Waste. The physician determined that Escobar had injured his right arm but that he could return to work with certain restrictions. The physician ordered that Escobar be restricted from lifting anything that weighed more than twenty-five pounds and from working longer than eight hours per day.

On February 3, Allied Waste sent Escobar a letter informing him that it had reviewed the medical report concerning his injury. Allied Waste indicated that it had identified an appropriate modified duty position for him based on the physician's assessment and stated that it was extending to Escobar "a bona fide offer of employment pursuant to [Rule §129.6 of the Texas Administrative Code]." (App. in Supp. of Pl.'s Mot. Summ. J. at 36.) The letter, however, did not specify the position Allied Waste had identified for Escobar's modified duty.

The letter instructed Escobar to return to work on February 3. It informed him that his work schedule would be Monday through

3

Friday from 5:00 a.m. until he completed his route and that he would be paid at the same rate as roll-off truck drivers. The letter then went on to state,

> This position will entail these specific physical and time requirements: No lifting objects/carrying objects more than 25lbs for more than 8 hours per day . . . . Please be assured that [Allied] Waste will only assign you task [sic] consistent with your physical abilities, knowledge, and skills and will provide you training if necessary.

(*Id.*)  Finally, the letter advised Escobar that he could contact Ruby Silva, Allied Waste's safety manager, if he had any questions. Escobar signed the letter indicating that he accepted Allied Waste's offer and returned to work on February 3.

When he returned to work, Escobar resumed his duties operating a roll-off truck. Allied Waste, however, did not immediately provide Escobar with any accommodations consistent with the physician's restrictions. Thus, for approximately one week Escobar performed all of the regular duties including the heavy work despite his restrictions. About a week later, Allied Waste assigned Escobar an assistant, but the assistant failed to provide any help. He merely observed Escobar perform all of his duties.

Escobar complained to his supervisors but nothing happened. Then, in late February, Escobar and two of his union representatives met with his supervisors and again informed them that Escobar's assistant was not providing any help. Still, the situation remained unchanged. On March 4, 2003, Escobar's

assistant failed to show up at work and was not seen again. Escobar never contacted Silva to inform her of the situation.

The next day, Escobar saw another physician approved by Allied Waste.  He concluded that Escobar was physically incapable of performing his duties and removed Escobar from his job.  The physician did not clear Escobar to return to work without any restrictions until August 22.  Escobar never returned to work after March 5.

Under Article 16, Section 5 of the CBA,

> An employee shall lose his seniority rights and the employment relationship shall cease under the following conditions . . . . Failing to perform duties of any regular position or classification for any reason for longer than six (6) months.  Performing modified duties pursuant to Article 14, Section 4 of this agreement does not constitute "performing duties of any regular position or classification" under this provision.

(App. in Supp. of Pl.'s Mot. Summ. J. at 27.)  In accordance with its interpretation of this article, Allied Waste determined that Escobar had not been performing the regular duties of a roll-off driver since January 23, 2003, the day the first physician placed Escobar on modified duty.  On July 23, six months later, Allied Waste sent a letter to Escobar informing him that it was terminating his employment because he had not performed his regular duties during the past six months.

Escobar timely filed a grievance under the CBA.  In accordance with the CBA, the grievance was submitted to binding arbitration

and the parties agreed on Bernard Marcus to serve as the arbitrator. According to the CBA,

> The arbitrator will be jointly contacted and asked to hold a hearing at which both parties may present evidence. The arbitrator shall decide only the grievance submitted by applying the express language of this agreement and shall have no authority to add to, subtract from, modify or amend this agreement, but shall be limited to determining whether or not a violation of the terms have been committed.
>
> The arbitrator's duly rendered decision shall be final and binding on the employer concerned, the union, and the employee(s) involved.

(App. in Supp. of Pl.'s Mot. Summ. J. at 22.)

The parties asked Marcus to answer the question,

> Did [Allied Waste] have just cause to terminate the employment of [Escobar] on the grounds that [Escobar] failed to perform the duties of any regular position or classification in the bargaining unit for a period longer than six months, as required in Article 16, Section 5, of the labor agreement?

(App. in Supp. of Pl.'s Mot. Summ. J. at 2.)  In accordance with the CBA, Marcus held a hearing and received evidence. After the hearing, Marcus invited the parties to submit post-hearing briefs arguing their positions.

After review of the evidence and the parties' briefs, Marcus concluded that Allied Waste had breached the CBA. Marcus began his opinion discussing Article 16(5) of the CBA. He found that article to be "clear and unambiguous." (App. in Supp. of Pl.'s Mot. Summ. J. at 8.) The clear meaning, according to Marcus, was that Article

6

16(5) gave Allied Waste the right to terminate any employee who failed to perform the duties of any regular position or classification for any reason, including injury, for longer than six months. He stated that Allied Waste had "the contractual obligation to establish that Escobar did not perform the regular duties of any bargaining unit job classification after January 23, 2003." (*Id.* at 9.) In other words, Marcus placed the burden on Allied Waste to prove that Escobar performed only modified duties between February 3 and March 5.

Based on the evidence, Marcus found that Escobar had performed his regular duties as a roll-off driver between February 3 and March 5, despite being placed on modified duty. Marcus rejected Allied Waste's argument that Escobar was obligated to inform its safety manager that his assistant failed to offer any help. Nevertheless, Marcus found that Escobar had, on two occasions, notified his supervisors that his assistant was not providing any help and that because no corrective action occurred, Escobar continued to perform his regular duties until March 5. Marcus also noted that Allied Waste had not produced any evidence to counter Escobar's assertion that he continued to perform his regular duties between February 3 and March 5 without modification. Marcus particularly noted that Allied Waste never called the assistant it assigned to Escobar to testify at the hearing.

Because he found that Escobar did in fact perform the regular

7

duties of a roll-off driver, Marcus concluded that the six-month clock under Article 16(5) did not begin to run until March 5, the day Escobar stopped performing his regular duties altogether due to his on-the-job injury. Marcus interpreted the plain language of Article 16(5) to mean that the question is whether in fact the employee is actually performing his regular duties or was performing modified duties—not whether that employee was technically placed on a modified duty by a physician. Since it wasn't until March 5 that Escobar ceased performing his regular duties, the six-month clock did not expire until September 5. And because Escobar was cleared to work without any restrictions on August 22, which was before the six-month period had expired, Allied Waste violated the CBA when it terminated his employment on July 23, which was also before the six-month period had expired.

As a result, Marcus directed Allied Waste to offer Escobar reinstatement to his former or equivalent position with no interruption in benefits or seniority. Further, Marcus directed Allied Waste to make Escobar whole for any loss of wages and other benefits between August 23, 2003, and the date he is reinstated or advises Allied Waste that he does not desire to return to work. Marcus allowed for an offset of any interim earnings, unemployment compensation, or state or federal assistance Escobar received after August 23.

II.  Analysis

    A.  Standard

Summary judgment is proper when the record establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). As mentioned above, the material facts in this case are not in dispute. What the parties dispute is the conclusion of the arbitrator that Allied Waste violated the CBA when it terminated Escobar's employment because he had not performed his regular duties for longer than six months.

Judicial review of an arbitration decision arising from the terms of a CBA is narrowly limited, and the Court is required to afford great deference to the arbitral award. *See Beaird Industries, Inc. v. Local 2297*, 404 F.3d 942, 944 (5th Cir. 2005). The Supreme Court has emphasized that

> the question of interpretation of the collective bargaining agreement is a question for the arbitrator. It is the arbitrator's construction which was bargained for, and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different than his.

*United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 598-99 (1960). Of course, the arbitrator is not free to disregard the terms of the CBA and impose "his own brand of industrial justice." *Beaird,* 404 F.3d at 944. Accordingly, the

9

Court will affirm an arbitral award "'as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority . . . ." *Id.* (quoting *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987)). If the arbitrator's decision "draw[s] its essence from the [CBA] . . . the fact a court is convinced he committed serious error does not suffice to overturn his decision." *Eastern Associated Coal corp. v. United Mine Workers of America, District 17, et al.*, 531 U.S. 57, 62 (2000)(internal quotations and citations omitted).

The Court has characterized the "essence test" as "rather metaphysical." *Kergosien v. Ocean Energy, Inc.*, 390 F.3d 346, 353 (5th Cir. 2004)(internal quotations and citations omitted). Thus, to draw its essence from the CBA, the award must in some logical way be derived from the wording or purpose of the contract, and "the single question is whether the award, however arrived at, is rationally inferable from the contract." *Id.* at 353-54.

B.   Discussion

Allied Waste begins its attack by arguing that Marcus "fashioned his own brand of industrial justice and rendered an award that does not draw its essence from the contract." (Pl.'s Mot. for Summ. J. at 5.)  It contends that Marcus "completely ignored [the] plain language of the CBA." (*Id.*) Although characterized in that fashion, as will be discussed below, in

10

reality Allied Waste's arguments invite the Court to second-guess Marcus's interpretation of Article 16(5) and his application of that article to the facts of this case.

Allied Waste asseverates that,

> The language of the CBA is clear—if a doctor releases an employee to work with restrictions, the employee is on modified duty and is not performing the functions of his regular position.

(Pl.'s Mot. for Summ. J. at 6.)  Allied Waste argues that Marcus's construction of Article 16(5) is erroneous because it makes it impossible for Allied Waste to place any of its employees on modified duty under the CBA or to terminate any of its employees for failing to perform their regular duties for six months. (Pl.'s Mot. for Summ. J. at 6.)  Allied Waste contends that his interpretation allows its employees to simply claim that they performed some of their regular duties while they were on modified duty, and that any employee can just reset the six-month clock by performing his regular duties while placed on modified duty.

Allied Waste argues that the correct interpretation of Article 16(5) is that any work an employee performs while placed on modified duty by a physician does not qualify as performing regular duties.  It is not until a physician removes the restrictions and clears the employee to perform his regular duties does the six-month clock end—according to Allied Waste's interpretation.  Thus, "the fact that Escobar claims to have performed his regular duties

11

for approximately one month . . . is beside the point." (Pl.'s Resp. to Def.'s Mot. for Summ. J. at 2.)

Further, Allied Waste argues that Marcus's interpretation is erroneous because it allows for its employees to merely disregard the orders of physicians placing them on modified duty. Allied Waste contends that its termination of Escobar was justified nonetheless because he violated the CBA and its rules when he continued to perform his regular duties despite a physician order to the contrary. Allied Waste argues, "Escobar should not be able to unilaterally avoid the plain language of the CBA by blatantly disregarding his doctor's orders and performing work beyond his restrictions without notifying the safety manager, Ruby Silva." (Pl.'s Mot. for Summ. J. at 6.)

Finally, Allied Waste contends that Marcus erred when he concluded that Escobar was not required to report his situation to Silva. According to Allied Waste, the February 3 letter to Escobar clearly advised him to direct any questions or concerns he had regarding his modified duty to Silva. Under the CBA, Allied Waste contends that Escobar had no authority to continue to perform his regular duties without informing Silva.

Marcus considered these arguments and rejected them. He observed that Article 16(5) clearly and unambiguously gave Allied Waste the right to terminate the employment of any employee who was not **performing** his regular duties, for whatever reason, for longer

12

than six months.  He concluded, however, that Article 16(5) speaks in terms of an employee's actual performance and not in terms of a physician's order placing an employee on modified duty.  Thus, for Marcus, whether Escobar continued to perform his regular duties despite a physician order to the contrary was not "besides the point," but was the critical question.

Based on the evidence, Marcus found, as fact, that Escobar had been performing his regular duties from February 3 until March 5 despite the physician order.  Applying his interpretation of the CBA, Marcus concluded that the six-month clock under Article 16(5) did not begin to run until March 5, the day Escobar actually stopped performing his regular duties.

Furthermore, Allied Waste did not discharge Escobar because he continued to perform his regular duties despite a physician order otherwise.  And the parties did not submit that issue to Marcus for arbitration.  According to the CBA, Marcus was strictly confined to adjudicating the issue the parties submitted to him, and that issue concerned Allied Waste's decision to terminate Escobar's employment because he had not performed his regular duties for more than six months under Article 16(5).  Thus, Marcus would have acted outside of his authority if he determined that, because Allied Waste could have terminated Escobar for alternative reasons, it did not violate the CBA.

Moreover, Allied Waste fails to point to any provision in the

13

CBA that required Escobar to report to its safety manager, Silva, that the conditions of his position required him to perform his regular duties beyond the physician-ordered restrictions. At best, Allied Waste points to the letter it sent Escobar on February 3. The CBA, however, provides that, "Employees shall immediately, or at the end of their shift, report all injuries to their immediate supervisor . . . ." (App. in Supp. of Pl.'s Mot. Summ. J. at 25.) Escobar twice reported to his immediate supervisors that his assistant failed to help him in any way and as a result, he was required to continue to perform his regular duties despite being injured.

The record shows that Marcus discharged his duties in accordance with the CBA and that he acted well within the scope of his authority. Following the terms of the CBA, Marcus held a hearing and gave both sides the opportunity to submit evidence. Additionally, a review of the language in Article 16(5) and in the CBA establishes that Marcus's interpretation and decision can be rationally inferred from it. Article 16(5) uses the words "perform" and "performing." Thus it is rational to infer that Article 16(5)'s primary concern is the actual work the employee is performing and not whether the employee was placed on modified duty by a physician. And the CBA provides that employees are to report their injuries to their immediate supervisors, not the safety manager. Thus, Marcus's conclusion that Escobar was not required

14

to report his situation to Silva and that he fulfilled any obligations he had by reporting his situation to his immediate supervisors is also rationally based on the CBA.

It is beyond the purview of this Court to review Marcus's findings of fact or to second-guess his interpretation and application of the CBA. As long as Marcus acted within the scope of his authority and his decision can be rationally inferred from the text and purpose of the CBA, this Court must confirm his decision and award. The Court's review is very narrow, and to the extent Allied Waste's arguments invite the Court to do otherwise, the Court must decline the invitation.

C. Attorney's Fees

Local 767 contends that Allied Waste's refusal to abide by and comply with the arbitrator's decision is without justification. Thus, Local 767 argues that it is entitled to reasonable attorney's fees.

As a starting point, the Supreme Court has repeatedly reaffirmed the "American Rule" holding that each party in a lawsuit ordinarily shall bear its own attorney's fees—"the prevailing party is not entitled to collect from the loser." *Buckhannon Bd. & Care Home, Inc., et al. v. West Virginia Dep't of Health & Human Res., et al.*, 532 U.S. 598, 602 (2001); *Hensley, et al. v. Eckerhart, et al.*, 461 U.S. 424, 429 (1983); *Alyeska Pipeline Service Co. v.*

*Wilderness Society,* 421 U.S. 240, 247 (1975). Under this practice, a court will not award attorney's fees to a prevailing party "absent explicit statutory authority." *Buckhannon,* 532 U.S. at 602.

Section 301 of LMRA does not explicitly provide for attorney's fees in a suit brought to vacate an arbitrator's award or to order its enforcement. Nevertheless, under the law of this Circuit, "when a challenger refuses to abide by an arbitrator's decision without justification, attorney's fees and costs may properly be awarded." *Bell Production Engineers Association v. Bell Helicopter Textron,* 688 F.2d 997, 999 (5th Cir. 1982). Of course, it is not enough simply to say that because the judicial challenge to the arbitration decision was unsuccessful, the refusal to abide by it, *a fortiori,* was without justification. *International Association of Machinists & Aerospace Workers, District 766 v. Texas Steel Company,* 639 F.2d 279, 283 (5th Cir. 1981). On the other hand, merely asserting, as grounds for refusing to accept the binding arbitration decision, that the arbitrator exceeded his authority, ignored the express terms of the CBA, and fashioned his own brand of industrial justice, does not mean that the refusal was justified. *See Id.* "Rather, the Court must look to the realities of the situation." *Id.*

The reality of the situation here is that Allied Waste's objections to Marcus's decision go to his construction of Article

16

16(5) and its application to the facts of this case.  Nothing in Allied Waste's arguments, although couched in that fashion, address whether Marcus acted outside the scope of his authority or that his decision cannot be rationally inferred from the text and purpose of the CBA.  Just because there may be room to disagree with Marcus's interpretation and application of Article 16(5) does not mean that his interpretation and application cannot be rationally inferred from it.  Allied Waste's objections to Marcus's decision, properly characterized, involve the intrinsic merits of the dispute.

    The Court has a duty to sanction

> frivolous and wasteful judicial challenges to conscientious and fair arbitration decisions . . . .  The federal labor policy favoring voluntary arbitration dictates that when a refusal to abide by an arbitration decision is without justification, and judicial enforcement is necessary, the court should award the party seeking enforcement reasonable costs and attorney's fees incurred in that effort.  This sanction is necessary lest federal labor policy be frustrated by judicial condonation of dilatory tactics that lead to wasteful and unnecessary litigation.

*Texas Steel Company,* 639 F.2d at 284 (holding district court abused discretion by not awarding attorney's fees).

III. Conclusion

    For the foregoing reasons, Allied Waste's summary-judgment motion is DENIED (doc. #12), and Local 767's summary-judgment motion is GRANTED (doc. #15).  The arbitration decision and award

17

entered on March 27, 2006, by Bernard Marcus and attached as Exhibit A to Allied Waste's original complaint is HEREBY CONFIRMED. Local 767 is entitled to judicial enforcement of the arbitrator's decision and award.  Further, Local 767 is entitled to costs and reasonable attorney's fees incurred in defending this action and seeking enforcement.  Local 767 shall have fourteen days from the date of this order to submit affidavits in support of such costs and fees, after which time Allied Waste shall have seven days to file any objections to the reasonableness of the costs and fees claimed.

    SIGNED June 13, 2007.

_____
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE

18